GARY RESTAINO
United States Attorney
District of Arizona

GLENN B. McCORMICK
Arizona State Bar No. 013328
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: glenn.mccormick@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | **CR-22-01144-PHX-SPL (ESW)** |
| v. | **UNITED STATES' OBJECTION TO THE PRESENTENCE REPORT** |
| Luis Antonio Corral-Rivera, | |
| Defendant. | |

The United States objects to paragraphs 13, 17, 22, 27, 31,  and 58 of the Presentence Report (PSR) as explained below.

**PARAGRAPH 13**

**1.  Corral Did Not Introduce Angulo to AF to Purchase Firearms**

Paragraph 13 contains the true statement: "Angulo-Rivera (hereinafter "Angulo") reported he met [AF[1]] through Corral-Rivera (hereinafter "Corral")."  However, contextually that true statement could be misread to indicate the introduction related to the firearms trafficking conspiracy.  Rather, Angulo indicated he knew AF because Corral had introduced him to AF approximately three years earlier. Nothing in the investigation suggests the introduction had anything to do with AF's firearms trafficking conspiracy. Angulo also indicated that Jaime Gaxiola, Jr. (hereinafter "Gaxiola") and Ulysses Estrada

---

[1] The initials AF are used to reference an unindicted person implicated in the firearms trafficking conspiracy by several of the defendants indicted in this investigation.

(hereinafter "Estrada") had introduced him (Angulo) to the scheme as a way to make money and that Gaxiola had instructed Angulo to contact AF if he wanted to take part in the scheme --to make money. This makes it clear that Corral was not the one who recruited or introduced Angulo to the scheme. The sentence can be corrected by rewriting it as follows: "Angulo-Rivera reported he met [AF] through Corral-Rivera (hereinafter "Corral") approximately three years earlier." Alternatively, the sentence can be deleted.

### 2.  Corral Did Not Direct Sandoval

Paragraph 13 also states: "[AF} provided Corral[] with money and the makes and models of firearms to be purchased, and Corral[] provided that information to Sandoval[]." That sentence is part of the PSR reasoning used to hold Corral accountable for the 25 firearms for which Sandoval was held accountable. However, the investigative reports indicate that Angulo and Corral were driven to a gun store by Sandoval where Corral gave Angulo, not Sandoval, the money to purchase a firearm and instructions regarding which firearm to purchase.  Therefore, Corral would be responsible for the firearms purchased by Angulo, but not necessarily all firearms associated with Sandoval. Sandoval was only personally involved in an attempted purchase of one firearm for which a NICS check prevented the purchase.  Sandoval never successfully purchased a firearm.  Thereafter, Sandoval attempted to recruit others, but only successfully recruited Rachel Green, who purchased two firearms. Sandoval otherwise worked to facilitate the scheme by transferring purchase funds to Estrada and straw purchasers, providing rides, and handing off firearms to people working for Gaxiola. The sentence quoted above is inaccurate as to Corral and should be deleted.  The sentence that follows the sentence quoted above states: "Sandoval[] was found to be accountable for 25 firearms." That sentence too, should be deleted as inapplicable to Corral or his accountability for firearms acquired through the conspiracy, as will be explained below.

### PARAGRAPH 17

### 1.  Corral Did Not Recruit Angulo and Sandoval

Paragraph 17 states: "[Corral] also recruited his cousins Sandoval[] and Angulo[], and the investigation further corroborated that they worked together in the conspiracy." However, as noted above, Gaxiola and Estrada recruited Angulo and Sandoval was recruited by Gaxiola.  The sentence can be corrected by deleting the first clause, leaving only, "Corral worked with his cousins Sandoval[] and Angulo[] in the conspiracy."

### 2. Corral is Responsible for 13 Firearms

Paragraph 17 also states: "[a]s the purchases Sandoval[] and Angulo[] made were within the scope of the activity, in furtherance of the activity, and reasonably foreseeable as part of their jointly undertaken criminal activity, Corral[] is responsible for each of the firearms his cousins purchased, in addition to the firearms he purchased at the direction of Gaxiola and [AF]."  Following that sentence literally, Corral should be held responsible for the four firearms he purchased, the two Angulo purchased and the four for which he transferred money, the one Sandoval attempted to purchase, and the two Greene purchased on behalf of Sandoval.  This adds up to a total of 13 firearms. However, the PSR calculates the total number of firearms Corral is responsible for to be 35.  Presumably, the PSR counts all 25 firearms for which Sandoval, who was determined to be a leader in the conspiracy, was held responsible for during his sentencing hearing, the four Corral purchased, and the six for which Angulo was responsible $(25 + 4 + 6 = 35)$.  The fact that Corral worked together with Angulo and Sandoval renders the firearms each purchased and directed as part of the conspiracy fairly attributable, each to the other.  However, the investigation did not find that Corral and Angulo knew the extent of Sandoval's involvement with Gaxiola.  Therefore, it was not foreseeable to Corral that Sandoval was as involved with Gaxiola as it turned out he was.  Therefore, Corral should be held accountable for 13 firearms, not 35.  The sentence quoted above is accurate and does not require editing.  However, the sentence that follows it states: "He is held accountable for 35 firearms."  That sentence should be corrected by inserting "13" for the number "35."

**PARAGRAPH 22**

**1. The 15-Round Magazine Adjustment is Not Applicable**

Paragraph 22 states: "The defendant purchased … along with 30-round magazines." U.S.S.G. § 2K2.1(a)(4)(B)(i)(I)[2] supports a Base Offense Level of 20, when "…(i) the offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine…" Applying this subsection, the PSR attributes a Base Offense Level of 20 to Corral. However, the firearms purchased by Corral were never recovered and the purchase receipts do not indicate that a magazine of any sort, much less a 30-round magazine was sold with the firearm. "'[C]apable of accepting a large capacity magazine' means … (A) the firearm had attached to it a magazine … that could accept more than 15 rounds of ammunition; or (B) a magazine … that could accept more than 15 rounds of ammunition was in close proximity to the firearm." 2K2.1, Note 2. The United States lacks evidence to prove a 15 plus round magazine was with or near the firearms. Therefore, the United States lacks sufficient evidence to support the application of 2K2.1(a)(4)(B)(i)(I) and the Base Offense Level of 20.

Like all the other defendants indicted and sentenced as part of this investigation, the applicable Base Offense Level is 12, pursuant to 2K2.1(a)(7).

**2. The 25 Firearms Attributable to Sandoval are Not Attributable to Corral**

Paragraph 22 attributes 35 firearms to Corral and applies an adjustment of six levels pursuant to 2K2.1(b)(1)(C). As noted above in the United States' objection to Paragraph Paragraph 17, Corral should be held accountable for 13 firearms, not 35, and should receive an adjustment of four levels pursuant to 2K2.1(b)(1)(B).

Determining the number of firearms attributable to a defendant pursuant to U.S.S.G. § 2K2.1(b)(1) requires the court to look to the Relevant Conduct section of the U.S.S.G. in § 1B1.3. *United States v. Vargem*, 747 F.3d 724, 730 (9th Cir. 2014) citing *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir.1998). A defendant is responsible for all contraband

---

[2] The United States concurs with the PSR that the 2021 Guidelines Manual applies. PSR, p. 7-8. All U.S.S.G. references herein refer to the 2021 Manual.

firearms procured in the criminal activity. U.S.S.G. § 1b1.3(a)(1)(A). In the present case, pursuant to 1b1.3(a)(1)(A), Corral straw purchased firearms on September 11, 2017, October 31, 2017, and November 15, 2017.  Corral is accountable for the four firearms he personally acquired.

In jointly undertaken criminal activity, a defendant is responsible for acts (firearms) of those jointly involved that are "within the scope of the jointly undertaken criminal activity; in furtherance of that criminal activity; and reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction." U.S.S.G. § 1b1.3(a)(1)(B)(i)-(iii). The investigation discovered that cousins Corral, Angulo, and Sandoval each knew the other straw purchased firearms for Gaxiola, Estrada, and or AF. At times the cousins worked together. For this reason, the United States agrees Corral is responsible for the firearms with which Corral should reasonably foresee Angulo and Sandoval to have been involved.

Although the investigation discovered approximately 36 firearms associated with the overall scheme, Angulo was not found to have been directly involved with most of those transactions. Angulo purchased straw purchased firearms on January 5, 2018, and January 8, 2018, and conducted money transfers associated with four straw purchases of firearms on December 18, 19, and 28, 2017, and on January 9, 2018.  During his sentencing hearing, Angulo was held responsible for those six firearms. The United States agrees that these six firearms are within the scope, in furtherance of, and reasonably foreseeable to be in connection with their jointly undertaken criminal activity.

Sandoval unsuccessfully attempted a straw purchase of a firearm on September 21, 2017, and was responsible for firearms straw purchased by his recruit, Greene, on December 19, 2017, and February 15, 2018. During Sandoval's sentencing hearing, he was held accountable for 25 firearms. However, Sandoval was held to be a manager and received a 2-Level Aggravated Role adjustment. Sandoval was involved in recruiting straw purchasers for Gaxiola, the movement of money related to purchases associated with

Gaxiola and Estrada, and the receipt and transfer of firearms to other persons working for Gaxiola. The court found that Sandoval was directly involved with many firearms associated with Gaxiola and Estrada, and many more were reasonably foreseeable to Sandoval. Although the evidence against Corral supports his responsibility for Sandoval's attempted purchase and the two purchases by Greene, there is no evidence to support the belief that it was foreseeable to Corral that Sandoval's had such a significantly greater involvement with Gaxiola and Estrada. For these reasons, the United States objects to firearms associated with Sandoval's leadership culpability inflating Corral's accountability for firearms. The united States submits that there is insufficient evidence to support the belief that Sandoval's greater responsibility was foreseeable to Corral.

The Untied States submits that Corral should be held accountable for the four firearms he straw purchased, the six Angulo is responsible for, and the one Sandoval attempted to purchase and the two Greene purchased on behalf of Sandoval, for a total of 13 firearms.  13 firearms results in an adjustment of 4-Levels pursuant to 2K2.1(b)(1)(B).

### 3.  Corral Did Not Know the Guns Were Going to A Cartel

Paragraph 22 indicates Corral knew the leaders of the conspiracy were working for a Cartel and he was transferring the firearms to others for whom possession or receipt of the firearms would be unlawful. Based upon these assertions, the PSR holds Corral accountable for Trafficking in Firearms. 2K2.1(b)(5). The United States objects to the application of 2K2.1(b)(5).

The United States objects to the assertion that Corral knew the leaders of the conspiracy were working with a Cartel.  Corral never said he believed that to be the case. The closest statement to this assertion in the entire investigation was made by Estrada when he told agents that [AF] and his father "*probably* work for an unknown cartel." This statement is vague and was not made by Corral.

### 4.  The U..S.S.G. § 2K2.1(b)(5) Adjustment is Not Applicable

None of the previously sentenced defendants received the 2K2.1(b)(5) adjustment.

Possession or receipt of a firearm is unlawful when the person to whom the firearm is transferred is, "an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." 2K2.1(b)(5), Note 13. The investigation did not uncover evidence that persons to whom Corral was responsible for transferring firearms, or anyone in the investigation for that matter, was unlawful as defined in 2K2.1(b)(5), Note 13. Therefore, 2K2.1(b)(5) is inapplicable, and the U.S.S.G. Offense Level calculation should not include the associated four levels.

As a result of  inadequate evidence to support a finding that a 15-plus round magazine was attached or near any of the applicable firearms, 13 firearms (rather than 35) being applicable pursuant to 2K2.1(b)(1)(C), and the inapplicability of the four level Trafficking in Firearms adjustment in 2K2.1(b)(5), the Base Offense level should be reduced from 34 to 20 in Paragraph 22.

| | |
|---|---|
| 2K2.1(a)(7) | Level 12 |
| 2K2.1(b)(1)(B) | +4 |
| 2K2.1(b)(6)(A) | +6 |
| Base Offense Level | 20 |

**PARAGRAPHS 27 AND 31**

As a result of the changes to Paragraph 22, the Level in Paragraph 27 should also be changed to Level 20. Similarly, the changes to Paragraph 22 result in the Total Offense Level in Paragraph 31 being reduced from 31 to 17.

**PARAGRAPH 58**

Paragraph 58 carries forward the inaccuracies in the Offense Level calculation. Paragraph 58 should be amended to read as follows:

> **"Guideline Provisions:** Based on a Total offense level of 17 and a Criminal History Category of I, the guideline imprisonment range is 24 to 30 months."

(The rest of the paragraph as originally written is not applicable because the range does not exceed the statutory maximum sentence.)

**CONCLUSION**

The United States submits that these objections should be sustained and the PSR should be amended accordingly. The objections are supported by the facts, law, and the Guidelines. Further, a proportional analysis of how other defendant's Guidelines Levels were calculated using the same evidence supports the objections submitted herein by the United States.

Respectfully submitted this 29th day of August, 2024.

GARY RESTAINO
United States Attorney
District of Arizona

 s/ Glenn B. McCormick
GLENN B. McCORMICK
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>August 29, 2024</u>, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Michael Atkins
Counsel for Luis Antonio Corral-Rivera

<u>s/Alexandria Gaulin</u>
U.S. Attorney's Office

- 9 -